## AS TO RIGHT TO ENJOIN LAYING RAILWAY TRACK ACROSS STREET.

Common Pleas Court of Hamilton County.

### THE J. B. DOPPES' SONS LUMBER CO. v. THE C., N. O. & T. P. RAILWAY CO.

Decided, April, 1911.

*Property Rights in Land—Inviolable but Subject to the Public Welfare—Right of Abutting Owner to Injunction Against Laying of Railway Track Across Street—Extent of Authority Conferred by Agreement Between Company and Municipality—Character of the Neighborhood One of the Determining Factors.*

1. The provision of Sections 8763, 8764 and 8765, for an agreement between a municipality and a railway company as to the terms and conditions upon which the company may occupy with a track any portion of a street, alley, way or public ground, and the ordinance granting the right to build a track across a street in accordance with the terms and conditions therein embodied affects the rights of a property owner as a member of the general public only, but leaves his private property rights intact.

2. The laying of a railway track across a street which forms a cul-de-sac constitutes an injury which may be enjoined if it appear that the injury is material and substantial in character.

3. But where the evidence is conflicting as to the extent of the injury and some of it is to the effect that the laying of the proposed track will, owing to the peculiar conditions, enhance the value of the plaintiff's property, and the neighborhood is a lumber district where there is much smoke and noise, the damages which may be sustained are evidently such as can be compensated in a suit at law, and the petition for an injunction against the laying of the track will be dismissed.

*Louis J. Dolle* and *Walter C. Taylor*, for plaintiff.
*Harmon, Colston, Goldsmith & Hoadly*, contra.

DICKSON, J.

Plaintiff complains that the defendant threatens to and will unless restrained construct and maintain as part of its system of railroad a switch track, and operate thereon a steam engine

and freight cars for its benefit, and incidentally for the benefit of one of its customers, across the mouth of a certain highway (Oehler street) in the city of Cincinnati, and into the land of this customer; that this highway is a *cul-de-sac* with its only outlet at and into an intersecting highway—Dalton avenue; that both of these highways are a part of the system of public streets of said city; that such action by the defendant railroad would be unlawful and against plaintiff's rights, causing irreparable loss to it, because plaintiff owns land on both sides of Oehler street at its blind end. Plaintiff prays for an injunction to prevent such conduct.

Defendant, in substance, confesses, and sets up in defense a grant, an ordinance obtained by defendant from said city whereby it was given on terms and according to law the right to do certain of the things set out in plaintiff's claim, denies any threatened injury to plaintiff, and asks to to be dismissed.

It is conceded that the city had a right to enact such an ordinance; also that the defendant company would, under condemnation proceedings, by virtue of its power of eminent domain, have a right to do certain of the things threatened, conditioned only that it do them after and not before the payment of due compensation in money as damages. In short, the issue raised by the pleadings, and by certain admissions made during trial, and by the evidence is: Shall the defendant company, desiring to make use of its grant, be compelled to appropriate plaintiff's right of property before the taking by suit and payment therefor; or, shall payment be enforced by plaintiff after the taking by suit?

Where government exists, there is no absolute right of property. All private property rights are at all times subservient to the public welfare.

The highways of a city are the property of the state. Their care and control is in the city. They must be kept open and free from nuisance; free from obstruction for public travel; except for temporary purposes this duty in the city can not be violated. This care and control of the highways is subservient at all times to the public necessity. These attributes of the high-

way obtain whether the fee of the highway be in the government or the abutting land owner. The use, the easement, is the thing of value.

The issues in this action concern private property rights in land abutting on a highway. Such rights are inviolate, but subject to the public welfare.

An owner of land abutting on a highway has in it three property rights:

1st. Within the lot lines the land and the structures therein are the owner's castle. This property right is private, is absolute, except alone subservient to the public welfare. The owner of this private property right—his castle—does not share it with the public at large. In it his fellow citizens have no right at all. This right is tangible. Any threatened invasion of it by any person, equity will entertain. This private property right equity jealously guards.

2d. In the highway within the lot lines, the land owner has a private property right, an easement. If the highway be a cul-de-sac, a street with only one outlet to only one intersecting street, such an owner has a private property right, an easement to the right or left, and beyond the lot lines extended to such an intersecting street. In such easements, the land owner has a private property right, not absolute, but shared in by the government and the public at large. This private property right is intangible. It is an incorporeal hereditament, appurtenant to and valuable to the land, and without which the land would be of little or no value. While this private property right is shared with the public, yet the public's interest therein is of a different kind. The value of the owner's land depends upon this easement. The value of this easement to the public is convenience alone. Any threatened invasion of this right in the owner equity will entertain.

3d. In the highway at each side of the lot lines extended, the land owner has a property right. It is not absolute—it is not private. He shares in such an easement with the public at large. His interest therein is as one of the public. It is of the same kind as the public interest; differing not in kind but in

degree only—degree of convenience.    Any threatened invasion of this property right, mere convenience, equity will not entertain. Mere convenience is not an incorporeal hereditament.    If inconvenience affect values of land equity will not intervene.

This rule does not include nuisances.

The highways are for public travel.    Only such modes of travel as are an aid to the whole public, or the public at large will be permitted..    That mode of travel which is an aid to the few, and is a serious injury to the many, will not be permitted.    Any person or corporation desiring for gain to place such an added burden permanently on the highway will be stopped—prohibited —unless he be given under the Constitution the power of eminent domain.

A steam railroad is such an additional burden.    The threatened construction and maintenance of the switch in question is an additional burden on Oehler street.    The defendant has a grant by ordinance, which is as follows:

"An ordinance No. 2436, granting permission to the Cincinnati, New Orleans & Texas Pacific Railway Company to lay a single track railroad across Oehler street (formerly Blackford street) in the city of Cincinnati, state of Ohio.

"Be it ordained by the council of the city of Cincinnati, state of Ohio.

"Sec. 1.    That permission be and the same hereby is granted to the Cincinnati, New Orleans & Texas Pacific Railway Company to lay a single track railroad for railroad purposes across Oehler street (formerly Blackford street) in said city at a point thirty-five (35) feet west from the west line of Dalton avenue measuring at right angles therefrom to the center line of said proposed track.

"Sec. 2.    That said track shall be constructed under the direction and to the satisfaction of the director of public service of said city, and shall be constructed at an angle of 90 degrees to the side lines of said Oehler street at the place where said track shall cross said street, and said track shall be so constructed as not to interfere with the ordinary use or drainage of said street.

"Sec. 3.    That said railway company shall lay the rails constituting said railroad track in said street so that the top of the rails shall be at a level with the street grade of said street, and

on the outside of each rail of the said track in said street said railway company shall place and maintain oak planking four inches thick and of suitable width so that the top surface of said planking will be on the same level with the top of the rail, and so that the space between the two rails of the track will be planked with oak planking four inches thick for the entire distance between the two rails, except for a space of two inches adjoining each rail, such space being necessary for the passage of the flanges of wheels of cars or locomotives using said track. The construction of the track below the rails shall consist of oak ties eight and one-half (8½) feet long, placed in a proper bed of ballast, to which the rails of the track shall be properly spiked and fastened, and the whole construction shall form a level top surface at the grade of the street.

"Sec. 4. The provisions of Section 3 hereof shall apply to the entire length of said railroad from the south line to the north line of said Oehler street, and the said track for the entire distance from the south line of said Oehler street to the north line of said Oehler street shall be constructed and maintained in accordance with the provisions of said Section 3 hereof.

"Sec. 5. Said railway company, and its successors and assigns shall keep said railway track and the crossing thereof in a safe condition and proper repair at all times for the entire width of said Oehler street, and on failure of said railway company, its successors or assigns, so to do after five days' notice in writing said city shall have the right to make said necessary repairs and collect all expenses of the same from said railway company. And the said railway company, its successors or assigns, shall raise or lower said track, at its own expense, to conform with any change of grade that may be made in said street, at said point where said railroad track crosses the same.

"Sec. 6. Said railway company shall not cause or permit any car or cars or locomotive to block said street except for the time necessary for the car or cars and locomotive to cross said street on said railroad track. And said railway company shall not permit said Oehler street to be blocked or obstructed at any other time by any car or cars or locomotives standing thereon to the hindrance or inconvenience of travelers or any person or vehicle along or upon said Oehler street.

"Sec. 7. That each and every violation of the provisions of this ordinance by said railway company shall be an offense, and for every such offense said company, its successors or assigns, shall be liable to a fine, and on conviction thereof, shall pay a fine of not less than ten or more than twenty-five dollars.

"Sec. 8.  This ordinance shall be in force and take effect from and after its passage and approval by the mayor of said city. "Passed March 6, A. D. 1911.                    JOHN GALVIN,
                                        "*President of Council.*

"Attest: EDWIN HENDERSON,
                "*Clerk.*    Approved March 9, 1911,
                        "LOUIS SCHWAB, *Mayor.*"

The power to pass this ordinance is given by the General Assembly by Section 3283, Revised Statutes, now Sections 8763, 8764 and 8765 of the General Code:

"Section 8763.  If in the location of any part of a railroad owned or operated by a domestic or foreign corporation, it be necessary to occupy with a surface or elevated track, with the necessary supports therefor, any public road, street, alley, way or ground, of any kind, or part thereof, the municipal or other corporation or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms and conditions upon which it can be used or occupied. In the event of the occupancy of such ground with an elevated track, the agreement shall specify the number, character and location of all supports for the track, any part of which will be upon such public ground, and the vertical and longitudinal clearances between such supports.

"Section 8764.  If the parties are unable to agree thereon, and it be necessary in the judgment of the directors of such company, to use or occupy such road, street, alley, way or ground, or a part thereof, for surface tracks, or for crossing with an elevated structure when no piers, supports or obstructions are to be placed therein, the company may appropriate so much thereof as is necessary for the purposes of its road, in the manner and upon the terms provided for the appropriation of the property. of individuals.

"Section 8765.  Every company which lays a track upon or over any such street, alley, road or ground, or part thereof, shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the owner before the proper court, at any time within two years from the completion of the track."

This act of the General Assembly could not and does not give the city the right to invade the plaintiff's private property rights given by the Constitution.  This act of the General Assembly,

and the ordinance under it, affects the plaintiff's rights as one of the public only. The plaintiff's private property rights exist the same as if there were no such act. Without this act the railroad could not place this switch on Oehler street. The General Assembly knew such a power might be abused, and injury result, and for this reason gave an added remedy in damages for any such injury to private or public property lying upon or near to such track or ground.

. The ordinance above quoted has no material effect on the merits of the case at bar. Often principles of law are easy of interpretation, but most difficult in application. To the end that right may be done, justice administered, courts of equity have the power to determine each case upon its own facts.

It is clear that the plaintiff has a private property right in Oehler street, in front of its land, and extending to Dalton avenue. Any added burden placed upon Oehler street must affect the value of plaintiff's land on Oehler street. A railroad track for cars propelled by a steam engine will affect the value of plaintiff's land. A destruction of, or a serious, or a material, or a substantial injury to plaintiff's easement, plaintiff's private property right in Oehler street to Dalton avenue, would be enjoined. A slight injury to, or a benefit to plaintiff's easement caused by such an added use, *i. e.,* this track and its intended use, would not be enjoined.

Plaintiff's land is on both sides of Oehler street, north and south, at the bottom or end of a *cul-de-sac,* and distant from Dalton avenue on the east 120 feet. Oehler street extends east and west. The land to the west and north of plaintiff's land is owned by defendant and used by it for extensive freight yards. Plaintiff, for its benefit, has a track operated by defendant into plaintiff's land. All the land in question lies in the railroad terminal district, is filled land, and in that part of the city peculiarly now adapted to the wholesale and retail lumber business. This kind of business requires railroad connections. The land into which the proposed track enters is adapted to and used for the lumber business. This land thus used or similarly used with a railroad connection is valuable, otherwise not. Oehler street

is unimproved in any way, and betwen plaintiff's lot lines extended, used only by the plaintiff and its customers. If the proposed track be laid, the plaintiff and its customers must cross it to reach this land. Undoubtedly the plaintiff's easement, its private property right in Oehler street, will be affected. Will it be injured and will the injury be substantial, material?

The evidence is conflicting. One witness claims the land of plaintiff would be benefitted by the track and its intended use; would tend to concentrate the lumber business in that immediate neighborhood.

By the terms of the ordinance, no car or engine shall stand on the track in the street. The track must be constructed and maintained and used so as not to materially obstruct or interfere with the ordinary use of the street. It is not denied that the capacity of the track in its proposed use is five cars each day. A court is not required to believe or to be convinced; it only finds, and finds from a preponderance of the evidence. The court finds that any injury to the plaintiff's private property right in Oehler street will be immaterial and not substantial, not sufficient to warrant a court of equity to grant an injunction. In such a neighborhood the noise and dirt caused by steam engines and cars will do little harm. Were this a residential or a shopping district, the case would be otherwise. If any injury shall be done plaintiff in its private property right, plaintiff is not without remedy. It can be fully compensated under the common law and the statute law.

Plaintiff complains that the use by the defendant of this single track may be extended, increased also, and more tracks placed there, and thus the burden on Oehler street be increased. Such a condition is not now threatened, and may be met when threatened.

The court is of the opinion that this action was brought in good faith. The petition will be dismissed and the costs divided.